# FIRST INSURANCE COMPANY OF HAWAII, LTD., Plaintiff-Appellant, *v.* GERALD JACKSON, Defendant-Appellee

NO. 9288

(CIVIL NO. 73429)

MARCH 22, 1984

BURNS, C.J., TANAKA, J., AND CIRCUIT
JUDGE BERTRAM T. KANBARA IN PLACE OF
ASSOCIATE JUDGE HEEN, RECUSED

## OPINION OF THE COURT BY TANAKA, J.

Plaintiff First Insurance Company of Hawaii, Ltd. (First Insurance) appeals from the summary judgment in favor of its insured, defendant Gerald Jackson (Jackson). That judgment denied First Insurance its statutory right of reimbursement from a settlement negotiated by Jackson with his tortfeasor and the tortfeasor's insurance company of fifty percent of the no-fault insurance benefits it paid to Jackson.

The only question on appeal is whether there are genuine issues of material fact in the record. We answer yes and reverse.

The following facts are undisputed. On January 2, 1981, while operating his automobile, Jackson was injured in a two-car accident. Oscar Jasper (Jasper) was the other driver. Subsequently, First Insurance, Jackson's insurer, paid Jackson no-fault benefits totaling $8,459.74, consisting of $3,144.14 for medical expenses, $5,000.00 for loss of earnings, and mileage reimbursement of $315.60. On October 22, 1981, Jackson and his wife Yvonne (Yvonne), filed a negligence action in First Circuit Court Civil No. 67847 (Civil No. 67847), praying for general damages of $100,000 for Jackson and $10,000 for Yvonne, respectively, and special damages "in an amount to be shown at time of trial." Jasper answered the complaint on November 3, 1981, denying liability.

On December 31, 1981, Jackson and Yvonne settled Civil No. 67847 for $25,000 and executed a release in favor of Jasper and his insurance company, Maryland Casualty Company (Maryland Casualty). The release in pertinent part provided:

That GERALD JACKSON and YVONNE JACKSON for and in consideration of payment to them of the sum of TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), . . . hereby release and forever discharge OSCAR JASPER and MARYLAND CASUALTY COMPANY . . . from any and all actions, causes of action, suits at law or in equity, liabilities, claims [sic] demands or damages, or [sic] whatsoever kind or nature, or in any manner resulting from, arisen out of, arising out of, or to arise out of any and all incidents or matters . . . especially connected with, traceable either directly or indi-

rectly to an automobile accident, which occurred on or about January 2, 1981, at or near the vicinity of Kapiolani Boulevard and Cooke Street, in the City and County of Honolulu, State of Hawaii.

IT IS SPECIFICALLY UNDERSTOOD AND AGREED that the parties hereby released agree that *the consideration paid* hereunder by OSCAR JASPER and MARYLAND CASUALTY COMPANY *is for general damages only and does not duplicate any no-fault benefits paid to date. The consideration is for general damages only.*

\*   \*   \*   \*   \*

. . . [T]his Release contains the entire agreement between the parties herein and . . . the terms of this Release are contractual and not a mere recital.

. . . [T]his Release shall apply to all claims and damages of every nature and kind whatsoever, including claims that are known and unknown, suspected and unsuspected, and . . . this Release shall be a full and final release of said OSCAR JASPER and MARYLAND CASUALTY COMPANY. . . .

And for the above-stated consideration, GERALD JACKSON and YVONNE JACKSON . . . hereby covenant and agree to indemnify and forever hold harmless OSCAR JASPER and MARYLAND CASUALTY COMPANY against any and all liability, costs, liens, including, but not limited to, . . . No-Fault Insurance Benefits . . . or other wage loss and medical expense benefits . . . resulting from any claim, demand, suit, action or cause of action which may be asserted by or on behalf of any person for injury or damage sustained by GERALD JACKSON and YVONNE JACKSON arising out of the above-mentioned accident and to defend OSCAR JASPER and MARYLAND CASUALTY COMPANY against any said claim, demand, suit, action or cause of action.

Record at 43-45 (emphasis added).

The Stipulation for Dismissal With Prejudice, signed by the attorneys for the parties in Civil No. 67847, was filed on January 11, 1982.

On September 21, 1982, First Insurance sued Jackson to enforce its statutory right of subrogation to fifty percent of the no-

 

fault benefits[1] paid, pursuant to Hawaii Revised Statutes (HRS) § 294-7 (1976, as amended).[2] Jackson filed a motion for summary judgment on January 10, 1983. After hearings were held, the circuit court granted Jackson's motion on March 28, 1983. This appeal followed.

I.

Our review of a summary judgment is subject to the same standard as that applicable to the circuit court's initial determination of the motion. *Munoz v. Yuen,* 66 Haw. 603, 670 P.2d 825 (1983). *See also Silver v. George,* 64 Haw. 503, 644 P.2d 955 (1982); *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976). Thus, summary judgment should be affirmed only when there are no genuine issues as to any material fact and the movant clearly demonstrates that he is entitled to a judgment as a matter of law. *See* Rule 56, Hawaii Rules of Civil Procedure (1981); *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980); *Hawaii Leasing v. Klein,* 4 Haw. App. 1, 658 P.2d 343 (1983). Additionally, the court, on review of a summary judgment, is constrained to view the evidence in the light most favorable to the non-moving party. *City & County v. Toyama,* 61 Haw. 156, 598 P.2d 168 (1979); *Hawaii Leasing v. Klein, supra.*

First Insurance argues on appeal that summary judgment for Jackson was improper since genuine issues of material fact exist regarding: (1) whether or not Jackson received through the release a "duplicative recovery" of no-fault benefits already paid and (2) whether the agreement released Jackson's claim for general dam-

---

[1] Hawaii Revised Statutes (HRS) § 294-2(10) defines "no-fault benefits" to include (A) medical and hospital expenses generally, (B) expenses for psychiatric, physical, and occupational therapy and rehabilitation, (C) monthly earnings loss, and (D) expenses necessarily incurred for loss of services, funeral expenses, attorney's fees and costs, and places an aggregate limit of $15,000 per person for such benefits.

[2] HRS § 294-7 provides:

§ 294-7 *Rights of subrogation.* Whenever any person effects a tort liability recovery for accidental harm, whether by suit or settlement, which duplicates no-fault benefits already paid under the provisions of this chapter, the no-fault insurer shall be subrogated to fifty per cent of the no-fault benefits, up to the maximum limit specified by section 294-3(c), paid to such person.

ages only or claims for both general and special damages.

Jackson contends, however, that (1) the release is an unambiguous integrated instrument, (2) First Insurance does not allege any fraud in the execution of the release, (3) the parol evidence rule precludes the admission of extrinsic evidence to alter the release, and (4) since the release clearly indicates that the consideration paid to Jackson "is for general damages only and does not duplicate any no-fault benefits paid," he was entitled to a summary judgment as a matter of law.

We hold that there are genuine issues of material fact regarding whether Jackson settled and released his tort claim in good faith.

## II.

We initially address the question of whether the parol evidence rule precludes First Insurance, a stranger to the release, from introducing extrinsic evidence to vary or contradict its express terms.

The law in this jurisdiction is clear regarding a stranger's use of extrinsic evidence to vary the terms of an integrated contract. Although our supreme court in *Chang v. Meagher,* 40 Haw. 96 (1953), stated broadly that the parol evidence rule would not apply to strangers to the instrument, the court clarified this pronouncement by its subsequent holding in *Akamine & Sons, Ltd. v. American Security Bank,* 50 Haw. 304, 440 P.2d 262 (1968). In *Akamine,* the court reasoned that the decision in *Chang v. Meagher* was "more soundly based on the right of a party or stranger to the instrument to show that the instrument is fraudulent." *Akamine & Sons, Ltd. v. American Security Bank,* 50 Haw. at 310, 440 P.2d at 266. Thus, the court held that the parol evidence rule applies in any situation, involving either parties or strangers to the instrument, where the rights and duties created by the document are in issue.

Although First Insurance does not claim that the release is fraudulent as to it, we need not consider the applicability of the other exceptions to the parol evidence rule since our primary concern here is not with the rights and duties created by the release, but with the rights of First Insurance and the duties imposed on Jackson under the provisions of HRS § 294-7. Thus, we hold that the parol evidence rule is not applicable in this case.

### III.

### A.

The declared purpose of Hawaii's Motor Vehicle Accident Reparations Act, HRS chapter 294 (1976, as amended) (No-Fault Act), "is to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents." HRS § 294-1(a). *See also* Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219; Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635-36. In effectuating such purpose, HRS § 294-4 requires the no-fault insurer to pay its insured benefits without regard to fault and HRS § 294-6 generally abolishes tort liability arising out of automobile accidents. However, in certain circumstances specified in HRS § 294-6 where a "threshold" requirement is met, the injured person retains the right to sue in tort.

In the cases where the right to sue in tort has been eliminated, the No-Fault Act effectively abrogates the insurer's common law right of subrogation against the tortfeasor. However, where a threshold requirement under HRS § 294-6 is met and the insured effects a tort liability recovery by suit or settlement "which duplicates no-fault benefits already paid" under the No-Fault Act, HRS § 294-7 confers on the insurer a subrogation right to fifty percent of the no-fault benefits it paid to the insured.

### B.

Under HRS § 294-7, the "insurer's right of subrogation *arises only where a no-fault claimant has recovered in tort* for the same items of damages previously paid by the no-fault insurer." Sen. Stand. Comm. Rep. No. 456, in 1978 Senate Journal, at 959, and Hse. Stand. Comm. Rep. No. 831, in 1978 House Journal, at 1784 (emphasis added). Although called a "right of subrogation," the insurer's HRS § 294-7 right is, in effect, a right of reimbursement after the insured effects a tort recovery. *See* 1 I. Schermer, *Automobile Liability Insurance* § 9.01[1] (2d ed. 1983); 73 Am. Jur. 2d *Subrogation* § 1 (1974). Thus, even with its HRS § 294-7 subrogation

right, the insurer has no right to pursue the tortfeasor for any portion of the no-fault benefits paid.

Since the insurer's right of reimbursement under HRS § 294-7 is a statutory right which arises only when the insured effects a tort recovery, the insured has full authority and control in the settlement and release of his tort claim. However, we do not believe that such authority and control are so absolute as to permit the insured to cut off the insurer's statutory right by wording the release so that the settlement recovery does not include no-fault benefits received from the insurer. Otherwise, the insured can eliminate his insurer's statutory reimbursement right by the mere labeling of the tort recovery in the release and HRS § 294-7 will have no practical effect when the insured settles his tort claim.

Since HRS § 294-7 expressly refers to tort recovery by settlement, we do not think that the legislature enacted a statute without a practical effect in case of a settlement. As stated by our supreme court in *Levy v. Kimball*, 51 Haw. 540, 545, 465 P.2d 580, 583 (1970):

> In the construction of a statute the general law is that a statute should be so interpreted to give it effect; and we must start with the presumption that our legislature intended to enact an effective law, and it is not to be presumed that legislation is in vain effort, or a nullity.

We hold that (1) an insured should not be permitted to abrogate his insurer's statutory right of reimbursement by the mere labeling of the tort recovery in the release, *see Russell v. Mackey*, 225 Kan. 588, 592 P.2d 902 (1979);[3] *cf. Kozlowski v. Briggs Leasing Corp.*, 96 Misc.2d 337, 408 N.Y.S.2d 1001 (1978), and (2) HRS § 294-7 imposes on the insured an obligation of good faith under objective standards in the settlement and release of his tort claim so that his insurer's statutory right of reimbursement would not be cut off

---

[3] The Kansas Supreme Court has devised its own way of handling the problem. Under that state's no-fault statute, the insurer is given a right of subrogation to the insured's recovery from the tortfeasor up "to the extent of duplicative personal injury protection [PIP] benefits" it paid. Kan. Stat. Ann. § 40-3113(b) (1981). The Kansas Supreme Court has construed its no-fault law to mean that "if the injured insured settles his total claim with the tortfeasor, including those elements of damage represented by the PIP benefits, the recovery is duplicative, since it includes the PIP benefits." *Russell v. Mackey*, 225 Kan. 588, 594, 592 P.2d 902, 906 (1979).

without a legitimate reason. *See Bonsall v. American Motorists Insurance Co.,* 109 Mich. App. 674, 311 N.W.2d 824 (1981).

IV.

The record in this case discloses a settlement and release for $25,000 even though Jackson and Yvonne sued for $110,000 in general damages plus unspecified special damages, Jasper's policy limit for bodily injury liability was $100,000, the no-fault benefits paid to Jackson were approximately $8,500, and Jackson released Jasper and Maryland Casualty from "all claims and damages of every nature and kind whatsoever" although the stated consideration was for general damages only. Viewing the evidence in the light most favorable to First Insurance, there is a reasonable inference that Jackson's settlement included a duplicative recovery of no-fault benefits and that the recovery was labeled in the release as "general damages only" to cut off First Insurance's statutory reimbursement right without any objectively legitimate reason.

Since there are genuine issues of material fact in the record, Jackson is not entitled to a summary judgment.

Reversed and remanded for trial.

*Carleton B. Reid (Ashley K. Fenton* with him on the briefs; *Davis, Playdon, Reid & Richards,* of counsel) for plaintiff-appellant.

*Henry N. Kitamura (Raymond J. Tam* and *Roy S.K. Chang* with him on the brief; *Shim, Sigal, Tam & Naito,* of counsel) for defendant-appellee.